# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

TEKNO PRODUCTS, INC.,

              Plaintiff,

    v.

GLOVE TRENDS INC., *et al.*,

              Defendants.

Civil Action No. 19-00091 (SDW) (ESK)

**OPINION**

**KIEL**, **United States Magistrate Judge**

This matter comes before the Court on the "Request Leave to File Motion to Dismiss for Duplicate Case, and Lack of Personal Jurisdiction" (the "Application") of defendant Ara Ohanian ("Ohanian"). (ECF No. 75.) Plaintiff Tekno Products, Inc. ("Tekno") opposes the Application. (ECF No. 76.) This Court has considered Ohanian's submission and the opposition thereto and decides this matter on the papers pursuant to Federal Rule of Civil Procedure 78. For the following reasons, the Application is granted insofar as it concerns a transfer of this action to the United States District Court for the Northern District of Georgia ("Georgia District Court"), and is otherwise denied.

## BACKGROUND

### I. THE NEW JERSEY ACTION

This action (the "New Jersey Action") was filed by Tekno on January 3, 2019. (ECF No. 1 ("Compl.").) The complaint alleges claims for trademark infringement, false designation of origin, copyright infringement, false marking, trade libel, unfair

competition, and unjust enrichment against Ohanian, Glove Trends Inc., and Alice Sevan Ohanian. (Compl. *passim*.) Tekno filed an amended complaint (the "Amended Complaint") on April 1, 2019. (ECF No. 22 ("Am. Compl.").) The Amended Complaint adds claims for conspiracy and spoliation of evidence. (*Id.* ¶¶ 88–99.)

## A.    The Parties

Tekno is a "marketer of direct response products and in the business of bringing useful products to the market." (*Id.* ¶ 15.) It markets products "related to cookware, toys, light-duty tools, gardening tools, gadgets, household goods and the like." (*Id.*)

Ohanian is a citizen of Canada and resides in Georgia. (*Id.* ¶ 5.) Tekno claims that Ohanian is a "purported co-inventor and co-owner of US Patent application no. 15/447,141 for a 'Digging Glove'." (*Id.*)

Alice Sevan Ohanian is Ohanian's mother. (ECF No. 63 at 3, lines 8–11 (June 6, 2019 Hr'g Tr.).) Magistrate Judge Leda D. Wettre recommended that her motion to dismiss for lack of personal jurisdiction be granted. (ECF No. 59.) On September 5, 2019, District Judge Susan D. Wigenton adopted Judge Wettre's recommendation and dismissed Alice Sevan Ohanian from the case. (ECF No. 65.) Accordingly, Alice Sevan Ohanian is no longer a party to the New Jersey Action.

## B.    Tekno's Claims in the New Jersey Action

In 2014, Tekno was looking to bring a gardening product to market that it called "Garden Genie." (Am. Compl. ¶16.) The Garden Genie consists of a gardening glove

with extensions on the fingertips.  (*Id.*).  The concept is not new and, according to Tekno, has been around since the 1940's.  (*Id.*)

In furtherance of its plan to bring the Garden Genie to market, Tekno undertook research and discovered that Ohanian was selling a similar product called the "Honey Badger."  (*Id.* ¶ 17.)  Tekno also discovered that Ohanian had been advertising the Honey Badger glove as being "patent pending" since September 15, 2013.  (*Id.* ¶ 18.)

In May 2015, Tekno contacted Ohanian.  Jeff Kurani, who is Tekno's co-owner, spoke with Ohanian on May 12 or 13, 2015.  Tekno concluded it was not interested in doing business with Ohanian.  (*Id.* ¶ 20.)  Tekno claims that Ohanian, thereafter, followed up with numerous calls and emails to Tekno and threatened legal action.  (*Id.* ¶ 21.)  Tekno did not respond.  (*Id.*)

On May 15, 2015, Ohanian registered the domain gardenglovegenie.com.  (*Id.*)  Tekno is the owner of the website www.buygardengenie.com.  (*Id.* ¶ 23.)

Ohanian continued to send emails to and leave messages for Tekno from May to August 2015.  (*Id.* ¶ 22.)  Tekno claims that once Ohanian became aware of Tekno's marketing and selling of the Garden Genie gloves, he began a "malicious campaign against Tekno."  (*Id.* ¶ 25.)  The campaign, Tekno claims, included false and defamatory internet publications and a YouTube video accusing Tekno of being "notorious for copyright infringement."  (*Id.* ¶¶ 25–27.)

On March 2, 2016, Tekno filed an application to register the "GARDEN GENIE" mark with the United States Patent and Trademark Office ("USPTO").  (*Id.* ¶ 26.)

Ohanian filed an application to register the "GARDEN GENIE" mark with the USPTO on April 3, 2017.  (*Id.* ¶ 28.)  Tekno claims that Ohanian's USPTO application uses identical images owned by Tekno.  (*Id.* ¶ 29.)  On November 2, 2017, Ohanian filed a Notice of Opposition with the USPTO to Tekno's application to register the "GARDEN GENIE" mark.  (*Id.* ¶ 31.)

Tekno claims that, thereafter, its counsel, John Rannells, purchased gloves from www.buygardengenie.com.  Mr. Rannells received what Tekno purports to be a "counterfeit" copy of Tekno's Garden Genie gloves contained in a box that infringes on Tekno's copyright.  (*Id.* ¶¶ 33, 34.)  Accordingly, Tekno claims that Ohanian sells, offers to sell, distributes, promotes, and advertises gloves that infringe on Tekno's trademark, trade dress, and copyright.  (*Id.* at 2.)

## II.    THE GEORGIA ACTION

On December 28, 2018, Ohanian simultaneously brought an action and filed an application for leave to proceed *in forma pauperis* (the "IFP Application") with the Georgia District Court (the "Georgia Action").  *See* N.D. Ga. Civil Action No. 18-5910-AT, ECF No. 1.  Ohanian attached a complaint to the IFP Application.  *Id.*, ECF No. 1-1. The complaint names Tekno as the defendant and reads:

> I have "priority" of MY Trademark: "Garden Genie" which has been infringed upon by Tekno Products Inc., which is a notorious repeat offender for the same & similar Intellectual Property Infringement.  This has caused me to Lose all my revenue since 2016.  My Livelihood is at stake.

> Currently I've been fighting to defend my Intellectual Property in TTAB, but Tekno Products Inc. has delayed as much as possible in an attempt to

depleat [*sic*] my resources. I'm left with no other choice after THEY Threatened [*sic*] to sue me falsely.

*Id.*

The Magistrate Judge in the Georgia District Court granted Ohanian's IFP Application. *Id.*, ECF No. 2. The order granting the IFP Application directed the Clerk of the Court to "submit [the] case to the District Court for a frivolity determination pursuant to 28 U.S.C. § 1915." *Id.* Ohanian's complaint was separately docketed on January 3, 2019. *Id.*, ECF No. 3.

On January 10, 2019, District Judge Amy Totenberg dismissed Ohanian's complaint without prejudice. *Id.*, ECF No. 4. Judge Totenberg determined that the complaint failed to sufficiently plead claims for trademark and copyright infringement. *Id.* However, Judge Totenberg specifically noted that "[a] dismissal without prejudice does not preclude the Plaintiff from filing another complaint that does sufficiently set forth the elements of a cause of action." *Id.* at 6 n.1.

On January 31, 2019, Ohanian filed an "Amendment to Complaint for Trademark Infringement, False Designation of Origin, Copyright Infringement, False Marking, Trade Libel, Unfair Competition and Unjust Enrichment" (the "Georgia Amended Complaint") against Tekno and Intellivision, Inc.[1] *Id.*, ECF No. 11. The Georgia

---

[1] Prior to filing the "Amendment to Complaint," Ohanian filed several other documents with the Georgia District Court. He filed an "Offer of Proof," wherein he requested the Georgia District Court to stay the Georgia Action because of a matter involving the same issues pending before the Trademark Trial and Appeal Board ("TTAB") of the USPTO. *Id.*, ECF No. 7. He also filed a "Motion for Disclosure of Witness," "Affidavit of Authentication of Evidence," and a

Amended Complaint alleges that Tekno has been unlawfully selling, distributing, promoting, and advertising "Garden Genie Gloves," in violation of Ohanian's right to the "GARDEN GENIE" mark. *Id.* Ohanian also claims, in the Georgia Amended Complaint, that he and Tekno have been involved in proceedings before the TTAB relating to his objection to Tekno's application to register the "GARDEN GENIE" mark. *Id.* ¶¶ 29–32. Count I of the Georgia Amended Complaint asserts a claim for "Willful Infringement" by Tekno. *Id.* ¶¶ 41–42. Count II asserts that Tekno is "Flouting The Law" by filing trademark registrations for "Garden Genie Gloves." *Id.* ¶¶ 43–45. Count III asserts a claim for "False Marking." *Id.* ¶ 46. Count IV asserts a claim set forth as "Georgia trade libel; Commercial disparagement, G.S.A. 2A:14 58." *Id.* ¶¶ 47–50. Count V asserts a claim for "Unfair Competition and False Designation of Origin 15 U.S.C. § 1125(a)." *Id.* ¶¶ 51–56. Count VI asserts claims under "Trademark Infringement, GA State; Unfair Competition, G.S.A. § 56:4-1." *Id.* ¶¶ 57–67. And Count VII asserts a claim for "Unjust Enrichment." *Id.* ¶¶ 68–69. In addition to monetary damages, the Georgia Amended Complaint seeks an order directing Tekno and Intellivision to refrain from selling, marketing, and promoting the "Garden Genie Gloves." *Id.* at 19.

The Georgia District Court reviewed the Georgia Amended Complaint and "determine[d] that it is not entirely frivolous." *Id.*, ECF No. 13. Accordingly, the

---

"Motion to Admit Evidence." *Id.*, ECF Nos. 8–10. These filings appear to be Ohanian's attempt to place documents he believes are relevant to his claims before the Georgia District Court.

Georgia District Court allowed the Georgia Amended Complaint "to proceed as any other civil action." *Id.* The Georgia Amended Complaint was served on Tekno on July 25, 2019. *Id.*, ECF No. 25, ¶ 2.

On April 9, 2019, Ohanian filed a Motion for Leave to File Second Amended Complaint and Brief in Support in the Georgia District Court. *Id.*, ECF No. 18. The motion sought to add six additional defendants. *Id.* The Georgia District Court denied the motion on June 20, 2019, holding that Ohanian "failed to offer any justification or basis to support the addition of these various claims and parties." *Id.*, ECF No. 23.

Tekno filed a Motion to Dismiss Plaintiff's Amended Complaint (the "Motion to Dismiss") on September 16, 2019 in the Georgia District Court. *Id.*, ECF No. 30. The Motion to Dismiss seeks to dismiss Counts I (Willful Infringement), II (Flouting the Law), III (False Marking), and IV (Georgia Trade Libel) of the Amended Complaint. *Id.*, ECF No. 30-1 at 3. Tekno also filed an Answer to Counts V, VI, and VII of the Amended Complaint on September 16, 2019. *Id.*, ECF No. 31.

Ohanian filed an opposition to the Motion to Dismiss on September 30, 2019. *Id.*, ECF No. 32. Tekno filed a reply to the opposition on October 7, 2019. *Id.*, ECF No. 34.

## III. THE PRESENT MOTION

Following disposition of various motions filed by Ohanian in the New Jersey Action, the Court scheduled a status conference for November 6, 2019. (ECF No. 67.) [2]

---

[2] The status conference was adjourned to November 13, 2019 upon Tekno's request. (ECF No. 70.)

In response to the scheduling of the status conference, Ohanian filed a letter on October 28, 2019 for "several urgent reasons." (ECF No. 71.) The first "reason" addressed in Ohanian's letter was a "duplicate case which was filed prior to this New Jersey case in 2018 with the Northern District of Georgia including the same parties . . . and the same causes of action AND the same trademark 'Garden Genie Gloves'." (*Id.* at 1.) Ohanian requested that the New Jersey Action be "dismissed, or deferred, or consolidated to avoid loss of private and judicial resources as well as to eliminate the possibility of confusion in the proceedings and outcome." (*Id.* at 2.)

On the same day, Ohanian also filed a "Request Leave to File Motion to Dismiss for Duplicate Case, and Lack of Personal Jurisdiction" (the "Leave Request"). (ECF No. 72.) In the Leave Request, Ohanian repeated his assertion that a "duplicate" matter was pending before the Georgia District Court and the New Jersey Action should be "dismissed, or deferred, or consolidated. . ." (*Id.* at 1.)

A status conference was held, on the record, on November 13, 2019. After hearing the arguments of Ohanian and Tekno's counsel, the Court granted Ohanian's Leave Request. (ECF No. 74.) Ohanian filed the Application on November 18, 2019. (ECF No. 75.) Tekno filed its opposition on November 27, 2019. (ECF No. 76.)

Ohanian argues that the New Jersey Action should be transferred to the Georgia District Court "in order to prevent further confusion, complication, schedule delays, discovery confusion by different attorneys for Tekno, waste of judicial and private

resources." (ECF. No. 75 at 1.)  In support of his argument, Ohanian cites to various cases from this District relating to the application of the first-filed rule.  (*Id.* at 2–3.)[3]

Tekno opposes the application of the first-filed rule on several grounds.  First, it claims the two cases are not "truly duplicative."  Tekno reasons that no duplication exists because it asserted "patent-related claims" against Ohanian in the New Jersey Action, but Ohanian has not asserted a patent-related claim in the Georgia Action.  (ECF No. 76 at 2–3.)  Second, Tekno argues that the bad faith exception to the first-filed rule applies.  This is because Ohanian "acted quickly" to file a short one-page handwritten complaint in Georgia.  Tekno argues that such a filing was in bad faith and performed to obtain jurisdiction in Georgia.  (*Id.* at 2–3.)

Tekno claims that in December 2018, it expedited registration of its box and commercial that were copied by Ohanian.  (*Id.* at 2.)  Tekno advised Ohanian of its intent to file a "Federal Lawsuit."  (*Id.*)  In response, Ohanian requested a call with Tekno.  (*Id.*)  Ohanian and a representative of Tekno spoke on December 26, 2018.  During the call, Ohanian asked if the parties were "friends" and told Tekno that he "has nothing to lose." (*Id.*).  Tekno advised Ohanian that the filing of its Federal Lawsuit was "imminent and hung up the phone."  (*Id.*).  Ohanian filed the complaint in the Georgia Action on December 28, 2018, along with his IFP Application.  N.D. Ga. Civil Action No. 18-5910-AT, ECF No. 1.

---

[3] Ohanian also argues that venue is not proper in New Jersey and this Court lacks personal jurisdiction over him.  (*Id.* at 3–5.)

# LEGAL ANALYSIS AND DISCUSSION

## I.     THE FIRST-FILED RULE

"In all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it."  *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941).  "The party who first brings a controversy into a court of competent jurisdiction for adjudication should, so far as our dual system permits, be free from the vexation of subsequent litigation over the same subject matter."  *Id.* at 930.  The rule is intended to "encourage[ ] sound judicial administration and promote[ ] comity among federal courts of equal rank."  *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988).  "Consistent with these principles, the first-to-file rule gives courts the power to stay, enjoin, or transfer a later-filed case."  *Allianz Life Ins. Co. of N. Am. v. Estate of Bleich,* No. 08-668, 2008 WL 4852683, at *3 (D.N.J. Nov. 7, 2008) (internal citation omitted).

The first-filed rule, however, is not a "mandate."  A court may deviate from the rule where there are "rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping."  *EEOC*, 850 F.2d at 972 (citations omitted).  A court may also deviate from the rule where the second-filed action has developed further than the first-filed action.  *Id.* at 975 (citing *Orthmann v. Apple River Campground*, 765 F.2d 119, 121 (8th Cir. 1985)).  Another circumstance where a court may deviate from the rule is where the first-filing party commenced suit in his preferred forum in anticipation of the opposing party's imminent suit in another, less favorable forum.  *Id.* (citing *Factors Etc.,*

*Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 217 (2d Cir. 1978), *cert. denied*, 440 U.S. 908

(1979); *Ven-Fuel, Inc. v. Dep't of Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982)).

## II.     TEKNO'S CLAIM OF BAD FAITH

In response to Ohanian's request to transfer the New Jersey Action to the Georgia

District Court, Tekno argues that the Court should recognize that "appropriate

circumstances" are present in this case to deviate from the first-filed rule.  Specifically,

Tekno argues that Ohanian acted in "bad faith forum shopping" by commencing suit in

Georgia "in anticipation of [Tekno's] imminent suit in another, less favorable, forum."

(ECF No. 76 at 3.)

Courts of this Circuit have recognized that a party who "runs to court" to first file

a suit in a bad faith attempt at forum shopping should not be rewarded by dismissing or

transferring a second-filed suit.  This exception to the first-filed rule advanced by Tekno

applies, however, only when the parties have been in settlement negotiations and a party

has imposed a deadline by which it will commence suit.  The exception does not penalize

a party who "runs to court" to first-file when no deadline has been imposed.

For example, in *Keating Fibre International, Inc. v. Weyerhaeuser Company, Inc.*,

416 F.Supp.2d 1048 (E.D. Pa. 2006), the opposing-parties had been in settlement

discussions for an extended period of time.  The parties met on November 29, 2005.  At

the meeting, the plaintiff (Keating) advised the defendant (Weyerhaeuser) that it intended

to file suit if the dispute could not be resolved.  Weyerhaeuser filed a declaratory

judgment action the next day in the United States District Court for the Western District

of Washington (the "Washington Court"). *Id.* at 1050. Keating filed suit on December 13, 2005 in the United States District Court for the Eastern District of Pennsylvania (the "Pennsylvania Court"). *Id.* Weyerhaeuser filed a motion to dismiss the Pennsylvania action based on the first-filed rule. Keating opposed the motion arguing that Weyerhaeuser acted in bad faith when it filed the declaratory judgment action the day after the last settlement meeting and for the sole purpose of forum shopping. *Id.*

The Pennsylvania Court held that the exception to the first-filed rule did not apply because Keating had not set a deadline after which it would resort to legal action should the parties not be able to resolve the dispute. *Id.* at 1052 (*citing EEOC,* 850 F.2d at 977; *FMC Corp. v. AMVAC Chem. Corp.*, 379 F.Supp.2d, 733, 744 (E.D. Pa. 2005); *Drugstore–Direct, Inc. v. Cartier Div.,* 350 F.Supp.2d 620, 623 (E.D. Pa. 2004); *One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc.*, 987 F.Supp. 317, 329 (D.N.J. 1997)). The Pennsylvania Court recognized that a party should not be "forced" to wait for "the initiative of the antagonist," when it can pursue a declaratory judgment action instead of waiting for the filing of an affirmative action. *Id.* at 1052. The Pennsylvania Court, moreover, noted that Keating had presented no evidence that the Washington Court "would, by virtue of practice or the precedent, be a more hospitable forum for Weyerhaeuser than the [Pennsylvania Court]." *Id.*; c*f. EEOC,* 850 F.2d at 978 (finding forum-shopping concerns based on the defendant's desire to avoid unfavorable Third Circuit precedent).

Further, Weyerhaeuser was a corporation headquartered in Washington and alleged that most of its witnesses and evidence were located there. The Pennsylvania Court held that this was a legitimate reason for its filing in that district. Thus, the court held that neither bad faith nor forum shopping were the *sole* motivations for Weyerhaeuser's declaratory judgment action in Washington. *Keating Fibre Int'l, Inc.,* 416 F.Supp.2d at 1052.

Here, Tekno did not impose a deadline by which Ohanian had to act on a settlement offer. By Tekno's own account, there were no ongoing "settlement" discussions. In the last telephone conference between Ohanian and Tekno, Ohanian asked if the parties were "friends" and told Tekno that he "has nothing to lose." In response, Tekno told Ohanian that the filing of its Federal Lawsuit was "imminent and hung up the phone." (ECF No. 76 at 2.) There is no evidence that Tekno issued a deadline to Ohanian before a lawsuit would be filed. Tekno, moreover, has not presented any evidence that Georgia, by virtue of practice or precedent, is a more favorable forum for Ohanian than New Jersey.

Accordingly, the bad faith exception does not apply.

### III.   THE PROGRESS OF THE TWO ACTIONS

Tekno also argues that the New Jersey Action has progressed further than the Georgia Action, thereby providing a basis for this Court to retain jurisdiction. In support, Tekno cites to the "75 docket entries in New Jersey" compared to the "standstill" in the Georgia Action caused by "Ohanian['s] on-going filings." (ECF No. 76 at 3.)

Although there are more docket entries in the New Jersey Action than the Georgia Action, that does not end the inquiry. Both Actions are in their infancy. In the New Jersey Action, pre-answer motions were resolved (ECF No. 65), Tekno filed an Amended Complaint (ECF No. 22), and a conference was held on November 13, 2019 (ECF No. 74). No discovery has been produced in response to discovery requests in the New Jersey Action. [4]

In the Georgia Action, an Amended Complaint was filed; the Court determined the Georgia Amended Complaint was not frivolous; the Court denied Ohanian's motion to file a Second Amended Complaint; Tekno filed a motion to dismiss for failure to state a claim; and Tekno filed an Answer to those counts in the Georgia Amended Complaint that were not relevant to the motion to dismiss. N.D. Ga. Civil Action No. 18-5910-AT, ECF Nos. 11, 13, 23, 30, 31. The motion to dismiss was fully briefed and submitted to Judge Totenberg for consideration on October 18, 2019. *Id.*, ECF entry preceding ECF No. 36.

Given their infancy, the progress of the Actions does not weigh against the application of the first-filed rule.

---

[4] The initial pretrial scheduling order in the New Jersey Action requires the parties to serve written discovery requests by December 2, 2019, with responses due on December 30, 2019. (ECF No. 74.)

## IV. TEKNO'S CLAIM THAT THE ACTIONS ARE NOT "TRULY DUPLICATIVE"

Although "[s]ome circuits have interpreted the first-filed rule liberally, applying it when two actions involve a 'similarity of core issues' or a 'closely related question[,]' ... the Third Circuit has interpreted the 'first-filed' rule narrowly, holding that it only applies to 'truly duplicative' proceedings." *Kedia v. Jamal,* No. 06-6054, 2007 WL 1239202, at *3 (D.N.J. Apr. 25, 2007) (internal citations omitted). As such, the rule applies only to proceedings already before another district court, which involve: (1) the same issues; and (2) the same parties. *See EEOC,* 850 F.2d at 971. The Third Circuit applies the first-filed rule where the matters are duplicative and on all fours. *Akishev v. Kapustin*, 23 F.Supp.3d 440, 448 (D.N.J. 2014). The cases must be truly duplicative so that a determination in one case would leave little to be determined in the other case. *Indivior Inc. v. Dr. Reddy's Labs. S.A.*, No. 17-7111, 2018 WL 4921541, at *7 (D.N.J. July 12, 2018).

### A. The Issues are the Same

Tekno argues that the first-filed rule does not apply because the Georgia Action only involves trademark claims, while its claims in the New Jersey Action include claims for Ohanian's "patent violations." (ECF No. 76 at 3.) Although the amended complaint in the Georgia Action does assert a patent-claim, *see* N.D. Ga. Civil Action No. 18-5910-AT, ECF No. 11 ¶ 46, Tekno's analysis of the first prong misses the mark. The first prong of the first-filed test does not require the "causes of action" to be identical. Rather, it requires the actions to relate to the "same issues."

For example, in *Mahmoud v. Rite Aid Corp.*, No. 11-6363, 2012 WL 3560645 (D.N.J. Aug. 16, 2012), District Judge Susan D. Wigenton addressed an application under the first-filed rule relating to the actions involving claims under different, but related, statutes. In *Mahmoud*, the plaintiff was a store manager for Rite Aid. He opted into a class action lawsuit alleging violations of the Fair Labor Standards Act ("FLSA") in the United States District Court for the Southern District of New York (the "New York Action"). *Id.* at *2. Following his termination from Rite Aid, the plaintiff filed a complaint in the Superior Court of New Jersey alleging violations of the FLSA, New Jersey Wage Payment Act, and the New Jersey Wage and Hour Law.[5] The matter was removed to this Court.

The New York Action, in which the plaintiff opted-in, asserted claims under the FLSA and New York Labor Law. *Id.* at *4. Nevertheless, the "core allegation in [the New York Action] under the FLSA is 'that Rite Aid misclassified plaintiff. . .and other store managers as executive employees who were exempt from the FLSA's overtime provisions when, in fact, they were performing primarily nonmanagerial work and were entitled to overtime pay.'" *Id.* In the New Jersey case, the plaintiff asserted that he was misclassified as an "exempt" employee, although he mainly performed nonmanagerial work and was, thus, entitled to overtime pay. *Id.* This Court held that the first prong of

---

[5] There were other claims asserted in the complaint including breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of the implied contract. *Id.* at *6. Rite Aid did not seek to dismiss these claims under the first-filed rule. *Id.*

the first-filed analysis was satisfied because the test requires the "causes of action in question deal with the same issues, and does not necessarily require that the statutes themselves be identical." *Id.*

As to the second prong, this Court determined that the presence of different parties in the two actions did not prevent application of the first-filed rule. The New York Action included "Rite Aid of New York" and Francis Offor, neither of whom were named in the New Jersey case. The New Jersey case named the plaintiff's supervisor as a defendant. The supervisor was not a named-party in the New York Action. *Id.* That, however, did not matter for the first-filed analysis because "[u]ltimately, the facts pled by [the plaintiff] that pertain to a wage payment cause of action focus on Rite Aid." *Id.* at *6.[6] Therefore, although different defendants were named in the two cases, as to the wage and hour claims, Rite Aid and the plaintiff were the only relevant parties.

The analysis and conclusion are no different here. The core issues in both the New Jersey Action and the Georgia Action are the rights to the GARDEN GENIE mark, and the resultant liability of the parties to each other based on competing claims of infringement. Ohanian's initial complaint in the Georgia Action, although insufficiently pleaded, sets out the core issues in the case: (1) the priority to the "GARDEN GENIE" mark; (2) Tekno's alleged infringement of the mark; and (3) damages resulting from the

_____

[6] Judge Wigenton stayed the wage and hour claims in the New Jersey case pending documentation confirming the plaintiff's withdrawal from the New York Action. *Id.* at *7.

alleged infringement. N.D. Ga. Civil Action No. 18-5910-AT, ECF No. 1. Tekno raises

the same issues in the New Jersey Action, in addition to a few additional claims:

1.      Count I asserts a copyright infringement action based on Ohanian's alleged copying of Tekno's copyrighted "GARDEN GENIE" box.

2.      Count II asserts a copyright infringement action based on Ohanian's alleged copying of Tekno's copyrighted "GARDEN GENIE" video.

3.      Count III asserts a false marking claim based on Ohanian's claim that there was a "patent pending" on Ohanian's product that infringes Tekno's "GARDEN GENIE" mark.

4.      Count IV asserts New Jersey trade libel and commercial disparagement claims based on Ohanian's alleged false statements about Tekno relating to the "GARDEN GENIE" product.

5.      Count V asserts Unfair Competition and False Designation of Origin claims based on Ohanian's alleged infringement of Tekno's common law trademark rights to the "GARDEN GENIE" mark.

6.      Count VI asserts Trademark Infringement and Unfair Competition claims under New Jersey law based on Ohanian's alleged infringement of Tekno's common law trademark rights to the "GARDEN GENIE" mark.

7.      Count VII asserts an Unjust Enrichment claim based on Ohanian's infringement of the "GARDEN GENIE" mark.

8.      Count VIII asserts a claim for an alleged "conspiracy" between Alice Sevan Ohanian and Ohanian to commit false marking, fraud on the USPTO, and unfair competition.

9.      Count IX asserts claims for Concealment and Spoliation of Evidence for Ohanian's alleged destruction of evidence relevant to the pending case.

Ohanian's amended complaint in the Georgia Action clarified his claims against

Tekno. The claims therein mirror Tekno's claims in the New Jersey Action:

1.      Count I asserts a claim for "Willful Infringement" based on Tekno's alleged infringement of Ohanian's patent application relating to a "Digging Glove" and the "GARDEN GENIE" mark. (¶¶ 5, 41–42.)

18

2.      Count II asserts a claim for "Flouting the Law" based on Tekno's wrongful filing of an application to register the "GARDEN GENIE" mark. (¶¶ 43–45.)

3.      Count III asserts a claim for False Marking.  No specific, separate allegations are asserted for this claim.  Rather, Ohanian refers to the prior allegations in the Georgia Amended Complaint.  (¶ 46.)

4.      Count IV asserts a claim for Georgia trade libel and commercial disparagement based on Tekno's alleged "aspersions" against Ohanian. (¶¶ 47–50.)

5.      Count V asserts claims for Unfair Competition and False Designation of Origin under 15 U.S.C. § 1125(a) based on Tekno's alleged willful infringement of the "GARDEN GENIE" mark.  (¶¶ 51–56.)

6.      Count VI alleges Trademark Infringement and Unfair Competition under Georgia law based on Tekno's alleged willful infringement of the "GARDEN GENIE" mark.  (¶¶ 57–67.)

7.      Count VII alleges Unjust Enrichment based on the same infringement claims.  (¶¶ 68–69.)

The first prong of the first-filed test is satisfied.  The two Actions deal with identical issues concerning the ownership of the "GARDEN GENIE" mark, the parties' claims against each other for infringement of the mark, and the parties' claims relating to the false patent markings.

### B.      The Parties are the Same

The second prong is also satisfied because Ohanian and Tekno are involved in both Actions.  The named-defendants in the New Jersey Action are Glove Trends Inc. ("Glove Trends"), Ohanian, and Alice Sevan Ohanian.  Although Alice Sevan Ohanian is a named-defendant, she is no longer a party to the New Jersey Action since her dismissal from the case.  Further, according to Tekno, Glove Trends is a company operated and

controlled entirely by Ohanian and is "an entity and/or alter ego that is used to …
infring[e] [the] GARDEN GENIE [mark]."  (¶ 19.)  Thus, in Tekno's eyes, there is no
difference between Ohanian and Glove Trends, as they are one and the same.

The named-defendants in the Georgia Action are Tekno Products, Inc. and
Intellivision, Inc. ("Intellivision").  It is not clear from the Georgia Amended Complaint
how Intellivision is involved in the alleged infringement of the "GARDEN GENIE" mark
or which specific claims are being asserted against Intellivision.  *See* Ga. Am. Compl.,
*passim.*  Additionally, it appears that Ohanian has no intention to proceed against
Intellivision.  Although a "Personal Service Package" for service of the summons and
complaint on Tekno was issued by the Georgia Court, no such package was prepared for
Intellivision.  N.D. Ga. Civil Action No. 18-5910-AT, ECF No. 22.  Since the filing of
the Georgia Amended Complaint on January 31, 2019, Ohanian has made no apparent
attempt at service, and counsel has not made an appearance, for Intellivision.
Intellivision should not be considered a "party" in the Georgia Action for analysis of the
second prong of the first-filed test.

Thus, essentially the same parties are the litigants in both Actions.

### C.      The Substantial Overlap Rule

However, even if Intellivision and Alice Sevan Ohanian were to be considered
"parties," the analysis of the second prong would not lead to a different result under
evolving Third Circuit jurisprudence.  Courts in the Third Circuit have adopted the
"substantial overlap" rule.  In *Mahmoud*, Judge Wigenton noted that the Third Circuit

"has not formally adopted a 'substantial overlap' rule." 2012 WL 3560645, at *5 n.7.

While an express adoption has not been issued, courts in the Third Circuit have applied

the "substantial overlap" rule and referenced it with approval.

Under the substantial overlap rule, absolute identicalness of parties and issues is

not necessary to apply the first-filed rule. The rationale for this rule is that the "crucial

inquiry … is whether the issues substantially overlap; there is no requirement that the

issues or the parties be identical." *GlaxoSmithKline Consumer Healthcare, L.P. v. Merix*

*Pharm. Corp.*, No. 05-898, 2005 WL 1116318, at *9 (D.N.J. May 10, 2005); *see also*

*Nature's Benefit, Inc. v. NFI*, No. 06-4836, 2007 WL 2462625, at *3 (D.N.J. Aug. 27,

2007) ("Neither identical parties nor identical issue[s] are needed, only a 'substantial

overlap.'"); *Synthes, Inc. v. Knapp*, 978 F.Supp.2d 450, 457 (E.D. Pa. 2013) ("We agree

with those decisions holding that the [first-filed] rule's application is not cabined to

proceedings involving identical parties and identical issues, but extends to cases where

there is a substantial overlap of the subject matter. Thus, the critical substantive inquiry

of the first-filed rule analysis is subject matter.") (internal citations omitted); *Law Sch.*

*Admissions Council, Inc. v. Tatro*, 153 F.Supp.3d 714, 724 (E.D. Pa. 2015) ("We find the

flexible approach to more fully meet the purposes of the first-filed rule. Restricting the

rule to identical or nearly identical claims invites overly creative lawyering on plead[ed]

defenses in the first filed suit.").

The trend in this Circuit has been to apply the more relaxed "substantial overlap"

rule. Under this analysis, the New Jersey Action easily falls into the first-filed rule. The

issues in the New Jersey Action and the Georgia Action substantially overlap. Indeed, the core issues in both Actions revolve around the rights to the "GARDEN GENIE" mark. The parties also substantially overlap. The main players in this fight are Tekno and Ohanian. Accordingly, under the "substantial overlap" test, the first-filed Action in Georgia should be the case where the dispute is decided.[7]

## V.      TRANSFER UNDER 28 U.S.C. § 1404

There are at least two options once a court determines that the first-filed rule applies. One remedy is to stay the second-filed action until relevant, pending issues are resolved in the first-filed action. *See Mahmoud*, 2012 WL 3560645, at *7. A court may also transfer the second-filed action to where the first-filed action is pending. 28 U.S.C. § 1404(a). The decision to transfer under § 1404(a) is committed to the court's sound discretion. *Cadapult Graphic Sys. v. Tektronix, Inc.*, 98 F.Supp.2d 560, 564 (D.N.J. 2000).

Under § 1404(a), a case may be transferred in the interest of justice to any other district where it might have been brought "[f]or the convenience of parties and witnesses." Here, Tekno does not argue that the claims in the New Jersey Action could not have been brought before the Georgia Court. (*See* ECF No. 76.) Indeed, Tekno filed a motion to dismiss Ohanian's amended complaint in the Georgia Action. The motion to

---

[7] Tekno appears to concede that the Georgia Action is the first-filed action. Tekno does not address the effect of the filing of the initial complaint with the IFP Application or the subsequent dismissal without prejudice of the initial complaint, followed by the filing of the Georgia Amended Complaint on January 31, 2019. Since Tekno did not raise issues relating to the effect of the procedural history, the Court declines to address it herein.

dismiss is not based on the lack of subject matter or personal jurisdiction over Tekno.

N.D. Ga. Civil Action No. 18-5910-AT, ECF No. 30.

Consideration of a request to transfer venue requires an assessment of the public and private interests involved in the choice of forum. The private interests to be considered may include: (a) the plaintiff's forum preference; (b) the defendant's preference; (c) where the claim arose; (d) the convenience of the parties; (e) the convenience of the witnesses to the extent the witnesses may be unavailable in one of the fora; and (f) the location of necessary books and records. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995). The public interests to be considered may include: (a) the enforceability of the judgment; (b) practical considerations; (c) the administrative difficulty in each fora resulting from court congestion; (d) the local interest; (e) the public policies of the fora; and (f) the familiarity of the trial judge with the applicable law. *Id.* Although the plaintiff's choice of forum should not be lightly disregarded, the Third Circuit has emphasized that "there is no definite formula or list of the factors to consider." *Id.* There is no exhaustive list of private and public factors to be considered; rather, the analysis under § 1404(a) is flexible and individualized, based on the unique facts of each case. *Lawrence v. Xerox Corp.*, 56 F.Supp.2d 442, 450 (D.N.J. 1999).

Where there is a "strong likelihood of consolidation with a related action," a transfer of venue is warranted. *Prudential Ins. Co. of Am. v. Rodano*, 493 F.Supp. 954, 955 (E.D. Pa. 1980); *Maxlow v. Leighton*, 325 F.Supp. 913, 915–17 (E.D. Pa. 1971). "[T]he presence of a related action in the transferee forum is such a powerful reason to

grant a transfer that courts do so even where other *Jumara* factors, such as the convenience of parties and witnesses, would suggest the opposite." *Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc.*, No. 09-2552, 2009 WL 1845236, at *5 (E.D. Pa. June 26, 2009) (citing *Weber v. Basic Comfort Inc.*, 155 F.Supp.2d 283, 286 (E.D. Pa. 2001); *Travelers Indem. Co. v. E.F. Corp.*, No. 95-5660, 1997 WL 135819, at *8 (E.D. Pa. Mar. 17, 1997)). "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404 was designed to prevent." *Travelers Indem. Co.*, 1997 WL 135819, at *8 (citing *Cont'l Grain Co. v. The Barge FBL-585*, 365 U.S. 19, 26 (1960)).

Here, the *Jumara* public and private factors were only nominally addressed by the parties. Tekno claims "New Jersey residents have a greater interest in the outcome of this proceeding than residents in Georgia" because Ohanian directed his activities against Tekno, which is located in New Jersey. (ECF No. 76 at 3.) However, Ohanian claims Tekno directed its allegedly illegal activities against him in Georgia. (ECF No. 75 at 1 (arguing that he "is the one that is injured and the claims are in the GA case"); *id.* at 2 (arguing that "[t]he Harm and Injury was done here in the state of GA").) Tekno also claims that given where potential witness may be located does not "make Georgia any more convenient than New Jersey." (ECF No. 76 at 4.) However, Tekno does not claim that Georgia is an inconvenient forum. In fact, it appears that the gardening-product in question has been sold nationally, through platforms such as Amazon, eBay, and QVC.

(*Id.*)  The parties note that witnesses may be located in California, Texas, New Jersey, and Georgia.  (ECF No. 75 at 4–5; ECF No. 76 at 4.)  Under such circumstances, neither Georgia nor New Jersey are inconvenient fora.

The *Jumara* factors are mostly neutral and, therefore, their neutrality does not outweigh the "powerful reason" to transfer this matter to the Georgia District Court where a related matter was filed first.

## CONCLUSION

For the foregoing reasons, this matter will be transferred to the Northern District of Georgia.  Additionally, since this matter will be transferred to the Northern District of Georgia, the Court denies Ohanian's application to dismiss the Amended Complaint for lack of personal jurisdiction.  An Order will accompany this Opinion.


/s/ Edward S. Kiel
Edward S. Kiel
United States Magistrate Judge

Dated: December 23, 2019